UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARCUS WAYNE ROBERTS, *pro se*

        Plaintiff,
        v.

JANET NAPOLITANO,
Secretary, U.S. Department of
Homeland Security, *et al.*,

        Defendants.

Civil Action No. 10-0239 (BAH)

## MEMORANDUM OPINION

In this case, plaintiff Marcus Wayne Roberts seeks a writ of mandamus to compel the U.S. Department of Homeland Security, and its Secretary, Janet Napolitano, to approve the plaintiff's application to participate in the U.S. Customs and Border Protection's Global Entry program, a program that provides expedited clearance through U.S. customs to certain pre-approved, low-risk travelers. The plaintiff's application for the program was denied due to a pending misdemeanor charge, and the plaintiff asserts that the denial of his application violates his civil rights. The defendants have moved to dismiss the Complaint for failure to state a claim, or in the alternative, for summary judgment. For the reasons discussed below, the defendants' motion to dismiss is granted.

### I.    BACKGROUND

Plaintiff Marcus Wayne Roberts, a citizen of the United States and the self-described "Ambassador (or former Ambassador) of the Federation of Saint Christopher and Nevis," filed

1

this case *pro se* on February 17, 2010. Compl. ¶ 1. On January 17, 2010, the plaintiff applied to participate in Global Entry, a pilot program initiated by the U.S. Customs and Border Protection (hereinafter "CBP") to expedite customs clearance for pre-approved, low-risk travelers arriving in the United States. *Id.*; Establishment of Global Entry Program, 74 Fed. Reg. 59934 (Nov. 19, 2009) (to be codified at 8 C.F.R. pt. 235). The program allows frequent "trusted travelers" to be processed for customs, immigration, and agriculture purposes at automated kiosks. *Id*.

The Global Entry application process involves several steps. First, applicants complete an online form and submit a $100 non-refundable fee. *Id*. at 59935. Second, CBP officers at a CBP Vetting Center review the applicant's information and conduct a background check in government criminal and antiterrorism databases, as well as foreign government databases. *Id.* at 59934. Applicants who meet the eligibility criteria receive an online message inviting them to schedule a personal interview at an enrollment center. *Id.* Final approval in the Global Entry program is contingent on the results of the vetting process and the interview. *Id.* at 59935.

At the required interview, CBP officers perform several procedures, including: verification of the applicant's identity and proof of citizenship or permanent resident status; confirmation of the validity of travel documents; confirmation that the candidate meets eligibility requirements for membership; electronic fingerprint scanning; and various background checks, including a search for criminal records in law enforcement databases. *Id*. at 59934. Applicants who do not complete the application process may be denied participation in the program.

Under the proposed CBP guidelines,[1] applicants also may fail to qualify for participation in the Global Entry pilot program if they: provide false or incomplete information on the application; have pending criminal charges or outstanding warrants; have been arrested for, or

---

[1] The CBP has yet to make permanent its guidelines for the Global Entry program. *See* Utilization of Global Entry Kiosks by NEXUS and SENTRI Participants, 75 Fed. Reg. 82203 (Dec. 29, 2010). A proposed rule to make the current pilot program into a "permanent voluntary international trusted traveler program" is pending. *Id.*

convicted of, any criminal offense; have previously violated any customs, immigration, or agriculture regulation, procedure, or law in any country; are the subject of an investigation by any Federal, State, or local law enforcement agency; fail to satisfy CBP that they are low-risk travelers or meet other program requirements; or if the applicant has been identified on a government watch list. *See id.* at 59933.

On February 11, 2010, the plaintiff received a letter from Global Entry informing him that his application had been processed and inviting him to schedule an interview to complete the enrollment process. Compl., Ex. C. The plaintiff scheduled his interview for the following day, February 12, 2010, at the El Paso, Texas Enrollment Center. Compl. ¶ 1. During the interview, the plaintiff was fingerprinted and his fingerprints were run through various law enforcement databases. Defs.' Mem. of P. & A. in Supp. Mot. Dismiss, ECF No. 4, at 6. The search revealed that on October 27, 2009, the plaintiff was arrested in Hudspeth County, Texas, for the "Class A" misdemeanor "Terroristic Threat." *Id.* at 6. The interviewing officer also noted that the plaintiff's behavior was "confused," that he claimed to be an ambassador who needed to travel "somewhere," and that "Hilary [sic] Clinton had almost taken his Passport Card away." AR000013. When the plaintiff was told that his application needed to be sent up for review due to his pending misdemeanor charge, the plaintiff "became angry and stood up stating he was going to sue the head of Homeland Security . . . and stomped out of the office." *Id.* The plaintiff concedes in his Complaint that he declined to answer any questions about his prior arrest, stating that "Roberts takes fifth amended [sic] to questions about the arrest." Compl. ¶ 1.

Five days after he threatened to sue, on February 17, 2010, the plaintiff filed this case against Janet Napolitano, Secretary of the U.S. Department of Homeland Security, and the U.S. Department of Homeland Security. On February 22, 2010, after the plaintiff had already

3

initiated this case, the plaintiff was formally informed that his application for Global Entry was denied because he had been arrested for a criminal offense and because he did not meet the program eligibility requirements. AR000021. The plaintiff alleges that the denial of his Global Entry application was an "arbitrary and capricious violation of his civil rights because he represents or has represented black people as a white man" and seeks a writ of mandamus ordering Secretary Napolitano and the U.S. Department of Homeland Security to grant him Global Entry privileges. Compl. ¶ 1. The plaintiff also requests "unspecified" punitive and compensatory damages, including reimbursement of the application filing fee. *Id*. at ¶ 7.

On May 3, 2010, the defendants filed a motion to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted, or in the alternative, for summary judgment pursuant to Federal Rule of Civil Procedure 56. Defs.' Mem. of P. & A. in Supp. Mot. Dismiss, ECF No. 4, at 1. For the reasons set forth below, the Court grants the defendants' motion to dismiss.[2]

## II. STANDARD OF REVIEW

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face" and to "nudge[ ] [his or her] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); FED. R. CIV. P. 12(b)(6). "[A] complaint [does not] suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (internal quotation marks omitted) (citing *Twombly*, 550 U.S. at 557). Instead,

---

[2] The Court maintains jurisdiction over this matter pursuant to 28 U.S.C. § 1331, which provides original jurisdiction to the federal district courts of "all civil actions arising under the . . . laws . . . of the United States," 28 U.S.C. § 1331, and thereby "confer[s] jurisdiction on federal courts to review agency action." *Califano v. Sanders*, 430 U.S. 99, 105 (1977). Venue is proper in the District of Columbia because the defendants reside in this district. *See* 28 U.S.C. § 1391(b)(1) ("A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in . . . a judicial district where any defendant resides, if all defendants reside in the same State.").

the complaint must plead facts that are more than "merely consistent with" a defendant's liability; "the plaintiff [must plead] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949, 1940.

Complaints filed by *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Even a *pro se* complainant, however, must plead "factual matter" that permits the court to infer "more than the mere possibility of misconduct." *Atherton v. D.C. Office of Mayor*, 567 F.3d 672, 682 (D.C. Cir. 2009) (citing *Iqbal*, 129 S.Ct. at 1950).

### III. DISCUSSION

The plaintiff has petitioned for a writ of mandamus to compel the defendants to "order Global Entry Privileges [sic]."[3] Compl. ¶ 1. The plaintiff argues that the Court maintains jurisdiction to hear the plaintiff's legal challenge and to issue a writ of mandamus under the Administrative Procedure Act, 5 U.S.C. § 501 *et seq.*; the Mandamus Act, 28 U.S.C. § 1361; the Declaratory Judgment Act, 28 U.S.C. § 2201; the Equal Access to Justice Act, 5 U.S.C. § 2412; the Fifth and Fourteenth Amendments of the U.S. Constitution; as well as Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq. Id.* ¶ 5. The plaintiff, however, is not entitled to relief under any of these statutes.[4]

---

[3] The plaintiff's Complaint alleges violation of his civil rights based on the denial of his application for Global Entry. *See* Compl. ¶ 1. His opposition to the defendants' motion to dismiss also alleges violations based on the denial of his application for two similar programs, NEXUS and SENTRI. *See* Pl.'s Opp'n to Def.'s Mot. to Dismiss at 1. The Court will not consider the propriety of the defendant's denial of the plaintiff's applications to participate in those programs because those allegations are nowhere stated in the Complaint. *See Sharp v. Rosa Mexicano, D.C., LLC*, 496 F. Supp. 2d 93, 97 n.3 (D.D.C. 2007) ("[P]laintiff cannot raise new claims for the first time in an opposition brief.").

[4] By handwritten letter, dated February 4, 2011, submitted by the plaintiff from the Federal Medical Center in Butner, N.C., the plaintiff writes that he apparently seeks "contempt proceedings against Secretary Napolitano if she

### A. Claim for Relief under the Administrative Procedure Act

The plaintiff alleges he is entitled to a writ of mandamus because the defendants' denial of his Global Entry application was "arbitrary and capricious [in] violation of his civil rights" under the Administrative Procedure Act (hereinafter "APA"). Compl. ¶¶ 1, 5. The Court, however, is precluded from reviewing the defendants' denial of plaintiff's Global Entry application under the APA because eligibility for the program is committed solely to the CBP's discretion by law.

Although there is "a strong presumption that agency action is reviewable" under the APA, courts are precluded from reviewing agency actions when the act "is committed to agency discretion by law." 5 U.S.C. § 701(a)(2); *Secy. of Labor v. Twentymile Coal Co.*, 456 F.3d 151, 156 (D.C. Cir. 2006) (citing *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971)). This situation arises "in those rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply.'" *Heckler v. Chaney*, 470 U.S. 821, 830 (1985) (quoting *Overton Park*, 401 U.S. at 410)). Judicial review is inappropriate because courts have "no meaningful standard against which to judge the agency's exercise of discretion." *Id.* Thus, statutes authorizing the agency's authority should be interpreted to have "committed the decision-making to the agency's judgment absolutely." *Id.*; *see also* 5 U.S.C. § 701(a)(2).

Section 701(a)(2) requires the court to "examine carefully the statute on which the claim of illegal agency conduct is based." *See U.S. Information Agency v. Krc*, 905 F.2d 389, 396 (D.C. Cir. 1990). If there are "no legal norms pursuant to which to evaluate the challenged action," the APA does not allow the Court to evaluate the propriety of the challenged agency

---

attempts to entrap me." Letter from Marcus Wayne Roberts dated Feb. 4, 2011, ECF No. 7, at 2. This motion is denied as without merit.

action. *Twentymile Coal*, 456 F.3d at 156 (quoting *Drake v. FAA,* 291 F.3d 59, 70 (D.C. Cir. 2002)).

The Global Entry program was authorized by the Intelligence Reform and Terrorism Prevention Act of 2004 (hereinafter "IRTPA"). *See* 8 U.S.C. § 1365b(k). The IRTPA instructs the Secretary of Homeland Security to "establish an international registered traveler program" in order to "expedite the screening and processing of international travelers, including United States Citizens and residents, who enter and exit the United States." 8 U.S.C. § 1365b(k)(3)(A). The Secretary was further instructed to "initiate a rulemaking to establish the program [and] criteria for participation," and ensure that the program "includes as many participants as practicable by . . . providing applicants with clear and consistent eligibility guidelines." 8 U.S.C. § 1365b(k)(3)(C),(E). Aside from those general mandates, the text of IRTPA is silent as to the criteria the Secretary of Homeland Security should apply in approving applications for entry into the Global Entry program. *See* 8 U.S.C. § 1365b(k)(3)(E)(iii). The statute's silence on this issue indicates that Congress committed to the defendants the sole discretion to determine eligibility guidelines and evaluate applicants. Accordingly, as "no judicially manageable standards are available for judging how and when an agency should exercise its discretion," absent colorable constitutional claims, the Court is precluded from reviewing the agency's decision to deny the plaintiff's application for entry into the Global Entry program. *Heckler*, 470 U.S. at 830; *see also Oryszak v. Sullivan*, 576 F.3d 522, 526 (D.C. Cir. 2009) (declining to review denial of plaintiff's security clearance because issuance of a security clearance "is a discretionary function of the Executive Branch [and] actions based upon denial of security clearance are committed to agency discretion by law, at least where a constitutional claim is not properly presented."); *Drake*, 291 F.3d at 71-72 (declining to review FAA action because the relevant statutory

language provided "virtually unbridled discretion" and "fairly exude[d] deference" to the agency).

Even assuming, *arguendo*, that the Court could review the agency's decision, the defendants' denial of the plaintiff's application is not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(a). To determine whether the agency action was arbitrary and capricious, the court must determine whether the agency "has examined the relevant data and articulated a satisfactory explanation for its action." *Bloch v. Powell*, 227 F. Supp. 2d 25, 31 (D.D.C. 2002). This standard does not allow the court to substitute its own judgment for that of the agency and requires the court to affirm the agency's decision as long as a rational basis for that decision exists. *See Ethyl Corp. v. EPA*, 541 F.2d 1, 34 (D.C. Cir. 1976) (citing *Overton Park*, 401 U.S. at 415; *Bowman Transp., Inc. v. Arkansas-Best Freight Sys.*, 419 U.S. 281, 290 (1974)).

The proposed CBP guidelines for entry into the Global Entry program make clear that applicants may not qualify for participation in the Global Entry program if applicants provide false or incomplete information on the application; have been arrested for, or convicted of any criminal offense; have pending criminal charges or outstanding warrants; or cannot otherwise satisfy the CBP of their low-risk status. *See* Establishment of Global Entry Program, 74 Fed. Reg. 59934 (Nov. 19, 2009) (to be codified at 8 C.F.R. pt. 235). The plaintiff does not dispute that he was arrested for making a "Terroristic Threat," a Class A misdemeanor under Texas state law, *see* TEX. PENAL CODE § 22.07, and the defendants state that this was the reason for denial of plaintiff's application. The agency's decision was therefore in full accordance with its proposed guidelines and was neither arbitrary, capricious, nor an abuse of discretion.

### B. Claim for Relief under the Mandamus Act.

The plaintiff asserts that he is also entitled to relief under the Mandamus Act. This, however, is incorrect. The Mandamus Act "grants district courts original jurisdiction over 'any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.'" *Baptist Mem'l Hosp. v. Sebelius,* 603 F.3d 57, 62 (D.C. Cir. 2010) (quoting 28 U.S.C. § 1361). To qualify for mandamus relief, a plaintiff must demonstrate that "(1) he has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to plaintiff." *Walpin v. Corp. for Nat'l and Cmty. Servs.*, 630 F.3d 184, 187 (D.C. Cir. 2011). The defendant must owe the plaintiff a "a clear nondiscretionary duty." *Ctr. for Arms Control & Non-Proliferation v. Pray*, 531 F.3d 836, 838 (D.C. Cir. 2008) (citing *Heckler v. Ringer*, 466 U.S. 602, 616 (1984)).

As explained above, eligibility for participation in the Global Entry program is committed to the discretion of CBP. As such, the defendants owe no duty to the plaintiff to accept him into the Global Entry program. The plaintiff has therefore failed to establish that he is entitled to relief under the Mandamus Act.

### C. Claim for Relief under the Declaratory Judgment Act

The plaintiff similarly fails to state a claim under the Declaratory Judgment Act. This Act allows a federal court to "declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). Not only does the plaintiff fail to establish how the Act is relevant to his allegations, but the Act only applies "if a judicially remediable right already exists." *Seized Prop. Recovery, Corp. v. U.S. Customs and Border Protection*, 502 F. Supp. 2d 50, 64 (D.D.C. 2007). The plaintiff has no judicially remediable right to entry in the

Global Entry program. Accordingly, the plaintiff's claim for relief under the Declaratory Judgment Act is without merit.

### D. Claim for Relief under the Fifth and Fourteenth Amendments

The plaintiff also argues that he is entitled to a writ of mandamus under the Fifth and Fourteenth Amendments of the Constitution. The plaintiff does not specify how his claim relates to the Fifth and Fourteenth Amendments, but states that the agency violated his civil rights "because he represents or has represented black people as a white man." Compl. ¶ 5. It is unclear whether the plaintiff is alleging a violation of his constitutional rights under the Fifth and Fourteenth Amendments' Due Process or Equal Protection Clauses. Regardless of which constitutional claim the plaintiff asserts, however, his constitutional claims are not properly pled.

Where, as here, a plaintiff claims that he was discriminated against in violation of the Fifth and Fourteenth Amendments, "the plaintiff must plead and prove that the defendant acted with discriminatory purpose." *Aref v. Holder*, No. 10-cv-0539, 2011 WL 1195813, at *18 (D.D.C. March 30, 2011) (citing *Iqbal*, 129 S.Ct. at 1948). Purposeful discrimination requires "a decisionmaker's undertaking a course of action because of, not merely in spite of, [the action's] adverse effects upon an identifiable group." *Iqbal*, 129 S.Ct. at 1948.

The plaintiff states that his Global Entry application was denied because the agency intended to discriminate against the class of people who have represented "black people as [white men]." Compl. ¶ 5. He provides no information to support this allegation or otherwise supplement this contention. Under the pleading standards set forth in *Iqbal*, a complaint does not suffice "if it tenders naked assertions devoid of further factual enhancement," but must plead facts that are more than "merely consistent with" a defendant's liability. *Iqbal*, 129 S.Ct. at 1949

(internal quotation marks omitted) (citing *Twombly*, 550 U.S. at 557). The plaintiff has failed to meet that standard, and, consequently, his constitutional claims must be dismissed.

### E. Claim for Relief under the Equal Access to Justice Act

The plaintiff also seeks unspecified relief under the Equal Access to Justice Act (hereinafter "EAJA"). The EAJA is a fee-shifting statute that provides for the award of attorneys' fees to parties who prevail in civil actions against the U.S. government. 28 U.S.C. § 2412. "EAJA is not a highway to federal court for anyone wishing to uphold the rule of law," and "there must be standing and otherwise proper subject matter jurisdiction for the *underlying* action." *Advanced Mgmt. Tech., Inc. v. FAA*, 211 F.3d 633, 637 (D.C. Cir. 2000) (emphasis in original). Moreover, to warrant an award of attorney's fees, a party must first prevail in its litigation. *Id.* The EAJA does not automatically confer jurisdiction over the plaintiff's claims, and the plaintiff has therefore failed to state a claim for relief under EAJA.

### F. Claim for Relief under Title VII of the Civil Rights Act of 1964

Title VII of the Civil Rights Act of 1964 protects employees from discrimination by their employer based on race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2. The plaintiff does not allege that he was discriminated against in his employment. He has therefore failed to state a valid claim under Title VII of the Civil Rights Act of 1964.

### IV. CONCLUSION

The Court concludes that the plaintiff has failed to state a claim under the Administrative Procedure Act, 5 U.S.C. § 501 *et seq.*; the Mandamus Act, 28 U.S.C. § 1361; the Declaratory Judgment Act, 28 U.S.C. § 2201; the Equal Access to Justice Act, 5 U.S.C. § 2412; the Fifth and Fourteenth Amendments of the U.S. Constitution; or Title VII of the Civil Rights Act of 1964,

42 U.S.C. § 2000e-2. Accordingly, the defendants' motion to dismiss is granted. An Order accompanies this Memorandum Opinion.

**DATED: June 20, 2011**

                                                            /s/ *Beryl A. Howell*
                                                          BERYL A. HOWELL
                                                          United States District Judge